Thank you. May it please the Court, my name is Brian Fisher, I represent the Kaufmans. I'm going to try to reserve two minutes and I will do my best to keep track of that. Thank you. State Farms hired engineer said he could not determine what caused the pipe to break. State Farm then asked for possible reasons why the pipe broke and the engineer said it was potentially caused by earth compaction or differential earth movement. Later, State Farm submits a declaration saying these were actually probable causes of the pipe break that had never been disclosed to the Kaufmans before. Counsel, is it your understanding that the insurer must identify the actual cause of some damage with 100% certainty? No, Your Honor. The insurer can identify the cause or even the world of causes, but it needs to be probable. We don't let experts speculate as to possible causes and that's the crux of the issue here. You know, it's axiomatic that under Evidence Rule 702, experts are not allowed to speculate as to possible causes. It's not helpful to the trier of fact because it invites them to speculate. The disclosure here said the expert's opinion was going to be possible reasons. That's not enough. Had the disclosure said, well, the expert's going to talk about probable reasons, that is a different ballgame. That tells the Kaufmans, okay, there's actually admissible expert testimony here. When the disclosure is there's only possible reasons, that instead tells the Kaufmans and any reasonable reader of this that the expert's going to be offering speculation. And frankly, that's what the Kaufmans thought. They thought this, the engineer, I don't know how to pronounce his name, so I'm just going to refer to him as the engineer, was going to be offering speculation as to possible reasons consistent with both the disclosure and his underlying report. Again, that supplemental disclosure reflects on paper. So a deposition was taken. A deposition was taken. And in that deposition, he was asked whether he had a conclusion within a reasonable degree of engineering certainty. Why doesn't that check off the box that needs to be checked off? Because you can have opinions to reasonable degrees of engineering certainty, but they can still be possible. Like let's imagine instead if the, instead of State Farm having the burden of proof, the Kaufmans had the burden of proof. And they produced an expert who said, you know, in the Kaufmans' backyard there's this rare, I don't know, type of mole that exists. And those moles burrow, and it is possible to a reasonable degree of zoological certainty that the mole burrowed and broke the pipe. But we don't have that. Exactly. And the engineer, similarly, the State Farm only had possible testimony. Well, going back to Judge Clifton's point, he had a reasonable degree of engineering certainty. So what, you know, why do you convert that as to not being reasonable? Well, so I would, to answer your question, ER-104, the supplemental disclosure, the following conclusion has been reached within a reasonable degree of engineering certainty. The pipe in the PVC crack was consistent with the lateral load potentially. Had he not said potentially, maybe this would be enough. But the potentially, and earlier in that, the paragraph before in the evaluation, may have been due. And then you keep going back to the disclosure, and I've asked you about the deposition, where they got much more specific. And your client's counsel had the opportunity to get much more specific. And he was asked, was there anything else that might have caused it? And his answer is no. And so I'm kind of struggling with how it wasn't pretty clear at that point that they were pointing at these two possible alternatives, but adding up to nothing else is going to explain what happened. What's missing? Well, what's missing is saying that they — Unless you want to keep your eyes closed, which is, I think, what is missing here. You're trying to argue to us that we ought to close our eyes to what happened, because you've never presented any evidence of an alternative cause. To answer your question, at the deposition, State Farm actually confirmed that these were possible causes. There was no testimony. And was there any other possible cause identified? No. And has there ever been any other cause possibly identified? No, because there was no — And has your client identified any other cause? No, Your Honor. So if the two possible causes are both part of the exclusion, what's missing? What's missing in the disclosure as well as the deposition is the ability to rule out everything else, as he did in his declaration. Well, actually, in his deposition, he said, are there any other possible causes? No. It seems to me that kind of clearly rules out anything else. And it takes a degree of willful blindness to conclude, oh, well, he's never made a disclosure to the level necessary, and so we're going to — and you're arguing to us, we need to disregard that evidence. And I'm having a hard time understanding why it wasn't pretty clear that was the position being taken by the insurance carrier. The position being taken by the insurance carrier was clear. They were denying for possible reasons, which, as the State Farm's 30B-6 — And there are these two possible reasons, and there's no other possible reasons. What am I missing? That there's no other possible reasons is not in the record. It's in the declaration. I did not see that in the deposition. I have it in front of me, and maybe I'm — Same deposition. If the ER, would you mind if I — I just have a quote from the deposition. Okay. Let me pull it up. As you sit here today, can you think of any other cause, or was there any other cause, considered as far as a possible cause of the crack? Not to my knowledge. And as a review of the picture that I showed you earlier, can you come up with any other potential cause or probable cause of the crack as you sit here today? No. I said no. If that's in the deposition, how is it that your client's not on notice, that that's what they're pointing at? Your Honor, we stand on the briefing that —  So moving to the — And you haven't come up with another cause and presented no evidence to the District Court of another cause. Well, the other cause, I would point out, is from the adjuster's declaration saying, well, product malfunction is the third one. So, and that — Well, let me go back to the question I posed. Sure, I apologize. Have you presented any evidence supporting another cause? We have not, but the record shows that there is a third one, identified by the adjuster, product malfunction. And that's important because that product malfunction is subject to an ensuing loss clause, under paragraph 1F of the policy. Now, the — what the ensuing loss clause does is it says, look, that pipe breaking from that product malfunction, State Farm doesn't have to pay for the broken pipe. But what it does have to pay for is losses that result from that broken pipe. And you had the opportunity to present evidence that that was, in fact, the cause, and no evidence was presented. Is that correct? I disagree. The State Farm's adjuster testified that — Identified that as a possible cause. Yes. And State Farm can deny coverage. And the testimony offered by the experts who looked at it concluded, apparently that was not an alternative clause that would explain it. But what matters is why State Farm denied it. We're here disputing the — we're here suing on State Farm's reason for the denial. But we've moved off the coverage question in terms of, was this loss covered by the policy? And now we're entirely on the question of, was the denial at that time based on insufficient information? And I understand that's a separate cause of action, but I want to be clear what it is we're talking about. Sure. That — I'm putting aside what they knew at the time, which is viable in and of itself. The adjuster says there are three reasons, not just the two the engineer identified. And that third reason, product malfunction, is how we get to coverage, even considering what's happened in the 2003 declaration. Except there's no evidence other than the speculation of the adjuster, not of somebody who's an expert in this subject, that, in fact, that was the cause. But that — and that means State Farm denied by speculation. You're asking us to adopt the theoretical possibility instead of the evidence offered by the engineers. I mean, the adjuster is qualified to say why the pipe broke. He is saying in his — let me pull up his declaration. He says, you know, based on his years of adjusting, we — the engineer — or, excuse me, the adjuster says it was wear on the pipe because it was — I think he says it's not typically at that location outside of the water main. You don't see PVC pipe. And so because there's that third cause, as established by the adjuster's testimony — Well, I'm not even sure that describing wear on the pipe is, in fact, a deficiency in the pipe. It reflects the pressure being put on the pipe, which is what results from the other two causes under discussion. So if that's what you're pointing at — Your Honor, the specific testimony from the deposition is that it's a 90-degree angle on PVC. It has nothing to do with differential earth movement or improper compaction. So — You know, there's kind of this conundrum here where we have an insurance adjuster with, what, 25 years of experience, some common sense, having seen a lot of different claims, and he gets the report, it's inconclusive, but he basically says there's not a cause that would have been covered. Turns out he's right. But now, in effect, we're going to penalize State Farm and send them to a bad-faith trial on this? There's just something missing, and maybe you can fill in the missing piece for me. Well, that is the law, as this Court has recognized in Fireman's Fund v. Alaska Partnership. A later vindication of the initial unreasonable denial doesn't get you out of bad faith. I understand that, but was it an unreasonable denial? So let me just ask you a practical question. If this were to go back for trial, if we were to determine there is a material fact that would preclude summary judgment, would the ultimate decision and vindication come in or not? I think it would depend how you—to give a yes or no answer. I don't think it would come in, because if it's going only on that issue of the bad faith at the time of the denial, then what happened later is irrelevant. Thank you. Didn't that first letter, though, the September 2021 letter, I know it's cited to the wrong language, but didn't it also say that the damage was related to subsurface water? It did. And ultimately, isn't that the reason that one of the two probable possible reasons that they're giving for denial is that subsurface isn't covered? That is correct, but subsurface water, that's not a reasonable reading of the policy, because there are other parts of the policy that clearly contemplate subsurface water being covered. I'd point you to the endorsement that covers overflow of subsurface water from a system designed to remove water from the foundation, like a sump pump. That is definitionally subsurface water. There's also water—there's a specific exclusion for water being applied to the weight of walls, of basement walls. That is definitionally below groundwater. Why is there—if you're interpreting that water below the surface of the ground to exclude all water below the surface of the ground, that other exclusion is meaningless, which you can't do under the McDonald case we cited in our reply. Was there a sump pump in this? No. Okay. But you still have to—you have to—under Weyerhaeuser, you have to interpret the policy as a whole. With my remaining two minutes and 30-some seconds, I'd like to reserve it for a bottle. Thank you. All right. Thank you, counsel. And Mr. Hesselgesser, did I get your name correct? That is correct, Your Honor. Fantastic. Thank you. All right. Good morning, sir. You have 15 minutes. Good morning, Your Honors, and may it please the Court. My name is Ryan Hesselgesser on behalf of State Farm. This case is an insurance coverage matter, as you guys just heard, pursuant to a homeowner's insurance policy issued by State Farm to the Coffmans. Coffmans suffered property damage after a water pipe ruptured and entered the basement of their home. State Farm promptly investigated the claim, concluded there was no coverage based on the plain language. Coffmans filed a lawsuit, and the District Court properly granted summary judgment on all claims. Let me ask you this, counsel, and I understand the December 2021 denial was a lot more thorough, but State Farm still issued a very problematic denial in the first instance in September of 2021. That's when they cited the wrong policy. Why can't that September 2021 letter support the Coffmans' claim of inadequate investigation and bad faith? Well, I think under Coventry, it does allow a claim for improper investigation. Washington law allows a claim for improper investigation, notwithstanding the fact that the insurer is correct. I think the evidence before the District Court, though, included, at the time of that September 21, 2021 letter, the declaration of Mr. Perry, where he said, and based on my years of experience, I looked at this. I looked at the picture. We did have the picture. We did have the information in the first report. And I looked at that, and I concluded I couldn't come up with a covered cause based on my years of experience. I don't know that – I don't think there's a case out there that says, for example, you need reasonable degree of engineering certainty as to this specific cause in order to deny or for it to be a reasonable denial, Your Honor. So I would submit that based on the evidence, there still, I think, would be enough there to say this was a reasonable denial. I think the District Court looked at that. Well, state farms' own officers or officials seem to say it didn't meet their standards. I think candidly they admitted that. Would they have liked to see the proper language cited? Absolutely. Would they have liked to see a little bit more analysis on, for example, the efficient proximate cause? Yes. And I think those were the two deficiencies of the letter. However, standing alone, I don't know that that supports an unreasonable denial of coverage. And I want to step back for a second because it depends on what cause of action you're pursuing it under. To your question earlier, Your Honor, if you're looking at an IFCA claim, an Insurance Fair Conduct Act claim, that provides a 20-day cure period, clearly the initial letter was cured well in advance of this litigation. So the IFCA claim, we would argue, Your Honor, that that does not support a stand-alone IFCA claim because State Farm did cure, issued a more robust denial letter. I would also submit, Your Honor, that there was an initial reservation of rights letter that needs to be reviewed in conjunction with that September 21st denial letter. And that one had all of the policy language in there. It had all of those causes listed. So at least from a standpoint of reasonableness, they put the insured on notice that this language was an issue, that we were hiring an engineer to investigate the loss, and that we were looking into coverage. So I think you look at that entirely from a standpoint of all of that information and look at State Farm's conduct at the time of the September 21st letter. And I think at a minimum, the IFCA claim, it does not support as to a common-law bad-faith claim. Then the question becomes, what is the harm? What are the damages resulting from the statements or what I would refer to as a clerical error in the letter? And the record does not have anything related to the damage or the harm. And I want to just make sure we're clear that that does not get to the damage to the home. Under no circumstances does that letter, even if you were able to maintain a claim that the letter was unreasonable or some mistake there, that that gets you to get the covered damages. You'd have to prove separate harm from that. And I think also you have to look at the conduct of State Farm after that letter. The October 26th letter from counsel does not mention any of the deficiencies they're now claiming. So the October 26th letter, the Kauffman's retained counsel. They issued a letter to State Farm. And that does not push back on any of those deficiencies. State Farm reopened the investigation, looked into the additional causes, sought additional evidence on its own. So I think that information comes in when you're looking at a bad-faith claim, Your Honor. Let's talk about that. Go ahead. So your position is even if there's some deficiency at the outset in the adjuster's letter that it's in effect cured or you can take into account the subsequent information. Yeah, I think you can take into account the reasonableness of the insurer's conduct in response to that. So you're looking at kind of the holistic situation for a bad-faith claim and not a single point in time. Right, and I think the position stems from Coventry, Your Honor. I think Coventry says, yeah, you can maintain a claim. If you had to go do the investigation for the insurer, if you had to retain experts and you had to go do it, ultimately the insurer was correct in coverage, but you can still maintain that claim. We don't have that here. They didn't retain an expert. They didn't do the investigation for State Farm. What about attorney's fees? Attorney's fees I don't think are recognized as a separate damage under Coventry as far as a tort damage, a bad-faith claim is what we're talking about there. So I don't think that Coventry goes that far to say, hey, I hired an attorney. And then I would also argue, Your Honor, that the attorney's letter did not push back on those issues. They didn't do that investigation, make those arguments. State Farm did that on its own. I think to the extent there's any questions on the declaration or the procedural or the evidentiary issue that's before the court, I just want to make sure it's clear that obviously this is an abuse of discretion standard. So the court has to look to the district court and say the district court abused the discretion in denying the motion to strike. I did hear some argument from counsel about 702, and I just wanted to point out that the court did not consider a Daubert motion or a 702 motion because it was untimely and denied on that basis. To the extent that was trying to be brought up here, I did not see that in the opening brief. My understanding of their argument was that it was a late disclosure under CR 26A2B, and our argument primarily is that A2C controls because this is a fact witness. And I think Your Honor was correct that this is the only witness, the expert witness, that looked at this. He came up with two possible causes. I think what's important is to look at the Capilouto case here, and that allows the insurer to say, look, if there's three possible causes here and all of them are excluded, and in that case it was a sewer backup issue, all of them are excluded, then the insurer can nevertheless deny coverage and is not unreasonable in denying coverage on that basis. I'd also point out that the Capilouto case, in fact, very similar factually, had a misquote of policy language issue in that case as well, and the court said, no, it was unreasonable and dismissed on that basis as well. But counsel for the Coffman's says that one of the three reasons, the product malfunction, isn't necessarily excluded. So here you don't have that situation where all three, no matter what, aren't going to be covered. The argument by Mr. Fisher is actually, Judge, one of them may be. I think that's a misstatement of that provision. What it is, it actually is excluded. First of all, the terms product malfunction are not used in the policy. It would be, I think, wear and tear is what the counsel's pointing to, or deterioration. That is excluded. It's absolutely excluded under subsection 1. The argument is that there's a resulting loss provision that would somehow provide coverage, but the resulting loss has to also be covered, and the resulting loss in that circumstances, our submission would be that it's still excluded under the subsurface water exclusion. So every cause along the chain here, there would be an exclusion that would apply. The other aspect of that is that State Farm did not, even though the adjuster may have mentioned that in his deposition, State Farm's December 13th letter said the predominant causes here were improper compaction and I think differential earth movement consistent with what the expert had said. So State Farm did not deny based on a product failure or indicate that that was the predominant or efficient proximate causes that term is used. And so I think it's important to note that just because there may be contributing factors or causes under another exclusion does not invalidate the earth movement exclusion, for example, here that does not have an ensuing loss provision. So I'm not aware of any case law that says that in Washington, that says, hey, you have to look here and then that somehow the ensuing loss provision here would then get rid of the earth movement exclusion or the improper compaction exclusion. Briefly, Your Honors, I think the important thing to note on this, and I think we've touched on all of it, but as far as the coverage question, there was no other evidence in the record, and I think the Court had recognized this, that there was no other evidence as to any other coverage question or anything submitted by the Coffman's. The Coffman's cite the Calavig case, and I want to just take a small moment there to distinguish that case. The Capilouto case distinguishes Calavig, and in Calavig, the issue before the Court was the insurer denied based on a suspicion of arson. And the insurer had evidence that it was a defective electrical box or that the fire resulted from a defective electrical box. The insurer ignored that evidence and said, no, it's arson, and maintained the denial. That was the linchpin to the conclusion by the Court that based on speculation and conjecture, it's unreasonable or it's a bad faith. So here we don't have that. We do not have anything that State Farm was ignoring, and there's no evidence that additional investigation would have revealed some other cause or some cause that could be covered here. And I think that is the key distinguishing point, and Capilouto really does hit on that, and so I would urge Your Honor to take that into consideration. I wanted to take a moment just to argue on the or touch about the misquotation of the clerical error. I noticed something in the reply brief from counsel that clerical error was not sufficient. I would submit that Washington law says otherwise. Washington law says a good faith mistake cannot be a basis for bad faith, and I think that's in Coventry. That's in a long line of cases. So I just think legally, if it is a clerical error or a mistake, a good faith mistake, which all the evidence indicates that it was, that cannot be the basis for an extracontractual claim here, Your Honor. Unless you have any other questions, I would submit, Your Honor, that the appellant has failed to demonstrate any reversible error in the district court. The record and the law clearly support the decision reached, and we would respectfully urge the Court to affirm the district court's decision. Thank you.  Thank you so much. Mr. Fisher. Thank you, Your Honors. Judge Clifton, during my break, I went back and looked at the three pages of Mr. Peoli's declaration in the record, or excuse me, deposition. I did not see the testimony that you cited. I am looking at page 33 right now. He's discussing the things that potentially broke the pipe break. Again, that's ER 33. Based on your prior investigation, you determined these possible causes. Has anything changed from your supplemental conclusion? No. State Farm is confirming these are possible causes. This is not the world of possible causes. They're speculating. We do not allow insurers to deny by speculation, as both the law and State Farm's own internal policies recognize. I heard some argument about causation. Causation was not an issue before the district court. It's not appropriate to get to that issue here where it has not been developed. While it's true there was a Daubert challenge made below, we're not pursuing that here. ER 702 exists separate of Daubert. We are not saying to you the engineer's methods for arriving at his conclusions were bad under Daubert. We are saying that it's a separate under ER 702 issue because it's not helpful to the prior fact because it's speculation. We also said in the opening brief the problem with this disclosure and with his testimony is that it's possible right in the heart of the 702 issue. Let me interrupt you, counsel. Yes. I want to talk a little bit more about your bad faith damages. What would the damages be? Well, to start with, the denial of policy benefits because under that the product malfunction, ensuing lost cost coverage is owed. In additional for bad faith and IFCA damages, there are non-economic damages. The stress of having to do this. The whole point of insurance is they're supposed to protect you in times of calamity. When there was six inches of water in the Coffman's basement, their homeowners insurance left them hung out to dry. That's precisely what bad faith and IFCA damages are designed to do. Well, that stress resulted from the denial. And if the denial was soundly based, even if the reasons came up later, I don't know that I understand how those damages can be asserted as resulting from the bad faith misconduct. It came from the denial. Our position is the denial is wrongful. If you disagree with me on that, there are some. Okay. You've argued that. I think we're sort of past that. No alternative ground has been identified. So you've got what injury resulted from the, what I will describe now as premature denial. Since the subsequent denial doesn't seem to be seriously at issue, what injury was suffered? I see the red light blinking. May I answer your question, please? The investigation costs. While it's true attorney's fees don't get covered for litigation costs, attorney's fees get covered for investigation costs, saying, do you have a claim? A lot of time, while our position is the denial is wrongful, if the denial wasn't wrongful, there was a lot of time wasted trying to converse back and forth. The Coffman's had to pay a coverage lawyer to get the State Farm to acknowledge the right policy language. Whose time was wasted, and how are you measuring that? What's the hourly rate on this time? How do you measure that? Well, the Coffman's pay a lawyer. Admittedly, that's not in the record. Okay. But I thought you, and maybe I misunderstood, I thought attorney's fees were not covered. So attorney's fees are not covered for the cost of litigation, but investigation costs. That's recognizable under the Consumer Protection Act and bad faith. And there are bad, no if, if, there's not, it's a wrongful denial of coverage, but bad faith. Those, it also includes those economic investigation damages. Even being deprived of information you're entitled to is a recognizable damage. Okay. Thank you, and thanks for letting me go a little over. Okay. Thank you, and thank you to both counsel. This matter is now submitted. And this concludes our arguments for this morning. Thank you again to everyone and the court staff. The court will now stand in recess.
judges: McKEOWN, CLIFTON, ALBA